FILED
2006 SEP -7 P 3:10
US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Marissa Maderazo,<br>Roselia Pollard,<br>and Barbara Miles,<br>on behalf of themselves and all others<br>similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>VHS San Antonio Partners, L.P. d/b/a<br>Baptist Health Systems, HCA Inc., a/k/a<br>Methodist Healthcare System of San<br>Antonio, Ltd. L.L.P.,<br>Christus Santa Rosa Health Care Corp.,<br><br>          Defendants. | Civil Action No. SA06CA0535<br><br>**SECOND AMENDED CLASS<br>ACTION COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

      Plaintiffs Marissa Maderazo, Roselia Pollard and Barbara Miles, by and through counsel, on behalf of themselves and all others similarly situated, bring this action against defendants for damages, and demand trial by jury, complaining and alleging as follows:

### NATURE OF THE ACTION

      1.    Defendants, which own and operate hospitals in the San Antonio Metropolitan Statistical Area ("San Antonio MSA" or "San Antonio area"), have for years conspired among themselves and with other hospitals in the San Antonio MSA to depress the compensation levels of registered nurses ("RNs") employed at the conspiring hospitals, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

2. In furtherance of their conspiracy, defendants and their co-conspirators also agreed to regularly exchange detailed and non-public information about the compensation each is paying or will pay to its RN employees. The agreement to exchange such information has facilitated the formation, implementation and enforcement of defendants' wage-fixing conspiracy. Pursuant to this agreement defendants and their co-conspirators in fact have exchanged such information, through meetings, telephone conversations and written surveys. The exchange of this information itself has suppressed competition among San Antonio-area hospitals in the compensation of RN employees, and has depressed the compensation they have paid to such employees, in violation of Section 1 of the Sherman Act.

3. Defendants' conspiratorial conduct has occurred in the context of a national nursing shortage. Absent their conspiracy, San Antonio-area hospitals would have responded to the nursing shortage by, among other things, substantially increasing RN compensation in an effort to attract a sufficient number of RNs to their respective hospitals. The history of hospital RN compensation and vacancy rates in the San Antonio MSA, however, reveals that hospital RNs are not being compensated at competitive levels. Despite years of high vacancy rates, compensation for hospital RNs in the San Antonio MSA has remained low and surprisingly stagnant. The few compensation increases in the past several years have been far too small to substantially decrease the area's nursing shortage.

4. Plaintiffs, on their own behalf and on behalf of the Class defined below, seek to recover for the compensation properly earned by RNs employed at San Antonio-area hospitals but unlawfully retained by such hospitals as a result of the conspiracy

alleged herein. Plaintiff also seeks costs, including reasonable attorneys' fees and interest, as allowed by law.

### JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337(a).

6. Venue is proper in this District pursuant to 15 U.S.C. §§ 15(a) and 22, and 28 U.S.C. § 1391(b), (c).

### PARTIES

7. Plaintiff Marissa Maderazo is an RN who has been employed at Methodist Children's Hospital of South Texas since before June 2002; she currently resides in San Antonio, Texas.

8. Plaintiff Roselia Pollard is an RN who has been employed by hospitals within both the Santa Rosa System and the Baptist Health System during the relevant time period; she currently resides in San Antonio, Texas.

9. Barbara Miles is an RN who has been employed by hospitals within both the Baptist Health System and the Methodist HealthCare System during the relevant time period; she currently resides in San Antonio, Texas.

10. Defendant HCA Inc., ("HCA") is a Delaware corporation with its principal place of business at One Park Plaza, Nashville, Tennessee. This Defendant may be served by agreement through its attorney, Robert C. Jones, Jones Day, 51 Louisiana Avenue, N.W., Washington, D.C. 20001-2113. HCA is a holding company whose affiliates own and operate hospitals throughout the United States, England and

Switzerland. HCA, through its affiliated entities, operates four hospitals in the San Antonio MSA.

11.     Defendant Methodist Healthcare System of San Antonio, Ltd. L.L.P. is an affiliate or subsidiary of defendant "HCA." Defendant Methodist Healthcare System of San Antonio, Ltd. L.L.C. can be served by agreement by serving its attorney, Robert C. Jones, Jones Day, 51 Louisiana Avenue, N.W., Washington, D.C. 20001-2113.

12.     Defendants HCA and Methodist Healthcare System of San Antonio, Ltd. L.L.P. own and/or operate the following hospitals in the San Antonio MSA: (a) Methodist Hospital, located at 7700 Floyd Curl Drive, San Antonio, TX, 78229; (b) the San Antonio Metropolitan Methodist Hospital, located at 1310 McCullough Ave. San Antonio, TX 78212; (c) the Methodist Children's Hospital of South Texas, located at 7700 Floyd Curl Drive, 520 Madison Oak Drive, San Antonio, TX 78258; (d) the Methodist Ambulatory Surgery Hospital Northwest, located at 9150 Huebner Road, Ste 100, San Antonio, TX 78240; and other facilities within the San Antonio MSA. HCA's hospitals in the San Antonio MSA have a capacity of over 1,700 beds and through these hospitals HCA employs over 2,700 RNs, or approximately 28% of the RNs employed by hospitals in the San Antonio MSA.

13.     Defendant VHS San Antonio Partners, L.P. ("VHS") is a Delaware limited partnership. VHS is a part of Vanguard Health Systems, ("Vanguard") a holding company registered as a Delaware corporation, with its principal place of business at 20 Burton Hills Boulevard, Suite 100, Nashville, TN 37215. Vanguard owns and operates hospitals in multiple states including Texas, Illinois, Arizona, California and Massachusetts.

14. VHS, doing business as Baptist Health Systems, owns five hospitals: (a) Northeast Baptist Hospital, 8811 Village Drive, San Antonio, TX 78217; (b) Baptist Medical Center, 111 Dallas St. San Antonio, TX, 78205; (c) St. Luke's Baptist Hospital, 7930 Floyd Curl Drive, San Antonio, TX 78229; (d) North Central Baptist Hospital, 520 Madison Oak Drive, San Antonio, TX 78258; and (e) Southeast Baptist Hospital. 4214 East Southcross Blvd., San Antonio, TX, 87222. Through these hospitals Vanguard has 1,495 licensed beds and employs over 1,400 RNs, or approximately 14% of the RNs employed by hospitals in the San Antonio MSA.

15. Defendant Christus Santa Rosa Health Care Corp. is a Texas non-profit corporation with its principal place of business at 5121 Steadmont, Houston, TX 77040. This Defendant can be served with process through its registered agent, Corporation Service Company, 701 Brazos Street, Suite 1050, Austin, Texas 78701.

16. Christus Santa Rosa Health Care owns and/or operates the Christus Santa Rosa Hospital and the Christus Santa Rosa Children's Hospital, both located at 333 North Santa Rosa Street, San Antonio, TX 78207 and an additional facility at 2827 Babcock Road, San Antonio, TX 78229. Through its Hospitals, Christus Santa Rosa Health Care employs over 1,400 RNs, or approximately 14% of the RNs employed by hospitals in the San Antonio MSA.

## CO-CONSPIRATORS

17. Various other hospitals and individuals not named as defendants in this complaint have participated as co-conspirators with defendants in the violations alleged herein.

## CLASS ACTION ALLEGATIONS

18. Plaintiffs bring this action under Federal Rule of Civil Procedure 23(b)(3) on their own behalf and on behalf of the following Class:

> All persons employed by any defendant or co-conspirator to work in a hospital in the San Antonio MSA as an RN at any time from June 20, 2002 until the present.

19. Plaintiffs do not know the exact number of Class members because such information is in the exclusive control of defendants. Approximately 9,800 full time equivalent RNs were employed by San Antonio MSA hospitals in 2005. Thus, the Class is so numerous that joinder of all Class members is impracticable.

20. Questions of law and fact that are common to the plaintiffs and other members of the Class predominate over questions that affect only individual members. The questions of law and fact that are common to the Class include:

   a. Whether San Antonio-area hospitals, including defendants, have conspired to depress the compensation they paid to their RN employees during the Class period;

   b. Whether the alleged conspiracy has been effective in depressing RN compensation;

   c. Whether San Antonio-area hospitals, including defendants, have agreed to share regularly with each other detailed and non-public data about current and prospective RN employee compensation;

   d. Whether defendants and the other San Antonio-area hospitals have regularly exchanged detailed and non-public information about current and future RN employee compensation;

e.  Whether the exchange of such information suppressed competition among San Antonio-area hospitals in the compensation of RN employees, and depressed the compensation paid to such employees; and

f.  The formula and data for estimating the amount by which Class members' compensation was depressed.

21.  Plaintiffs' claims are typical of the claims of the members of the Class because plaintiffs are RNs who have been employed by one of the San Antonio-area hospitals during the Class period and have been damaged by the unlawful conduct alleged herein. Plaintiffs, by advancing their own claims, will also advance the claims of all members of the Class.

22.  Plaintiff and her counsel will fairly and adequately protect the interests of all Class members. There are no material conflicts between plaintiff's interests in this litigation and those of Class members that would make class certification inappropriate. Counsel for plaintiff are experienced in antitrust class actions, and will vigorously assert plaintiff's claims and those of the other Class members.

23.  Class action treatment is superior to the alternatives for the fair and efficient adjudication of the causes of action alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this case that would preclude its maintenance as a class action.

## INTERSTATE TRADE AND COMMERCE

24. Each of the hospitals named as a defendant herein provides patient care for persons coming to that hospital from states other than Texas.

25. Each defendant named herein compensates the RNs it employs within the San Antonio MSA in part with funds provided by insurance carriers and other health care providers that are located in states other than Texas. These carriers and providers render payments to each named defendant by mailing funds across state lines.

26. Each defendant named herein also compensates the RNs it employs within the San Antonio MSA in part with Medicare funds paid to each defendant by the United States; these payments to each named defendant are mailed across state lines.

27. Both HCA and Vanguard have their primary places of business in states other than Texas and operate hospitals in states other than Texas.

28. The unlawful conduct alleged herein directly involves and substantially affects interstate trade and commerce.

## FACTUAL BACKGROUND

### The San Antonio MSA Hospital RN Market

29. The San Antonio MSA is comprised of San Antonio, TX, and the immediately surrounding towns and cities.

30. Hospitals in the San Antonio MSA employ approximately 9,800 full-time-equivalent RNs.

31. This market is heavily concentrated. The defendant hospitals employ approximately 56% of the hospital RNs in the San Antonio MSA.

**Conspiracy to Suppress RN Compensation**

32. Beginning before June 2002 and continuing to the present, defendants have conspired with each other and with other San Antonio-area hospitals to depress the compensation paid to RNs employed at hospitals within the San Antonio MSA.

33. In furtherance of their conspiracy, defendants and their co-conspirators have done those things they agreed to do, including:

   a. Agreeing to regularly exchange, and regularly exchanging, detailed and non-public data concerning the compensation each is paying or will pay to its RN employees;

   b. Agreeing not to compete, and not competing, with each other in the setting of RN employee compensation;

   c. Paying RN employees at the same or nearly the same rate as each other; and

   d. Jointly recruiting RNs at job fairs and elsewhere to avoid competing to attract new RNs to their respective hospitals.

34. In particular, during and before the Class period, the actions of defendants and their co-conspirators taken in furtherance of the conspiracy have included the following.

35. Human resources employees working at defendant and co-conspirator hospitals have regularly telephoned each other to determine the compensation for RNs at competing hospitals, including any scheduled increases in RN compensation. Hospital administrators in the San Antonio MSA have used this information to set RN compensation.

36.     Hospital human resource departments purchase third party surveys of the benefits and salaries of San Antonio hospitals.   Human resources employees can readily identify each surveyed hospital from identifying information contained therein.  Hospital administrators in the San Antonio MSA have used this information to set RN compensation.

37.     Hospital recruiters attend meetings of the San Antonio Health Care Human Resources Administrators Association and other like organizations at which current wage information is shared.  Hospital administrators in the San Antonio MSA have used this information to set RN compensation.

38.     Hospitals in the San Antonio MSA have paid very similar RN compensation.  For example, during the class period, all or nearly all San Antonio-area hospitals have compensated entry-level RN employees at an hourly rate that has differed from one another by no more than $1.

39.     Defendants' unlawful conspiracy has had the following effects, before and during the Class period:

   a. Competition among defendants and their co-conspirators in the recruitment and compensation of hospital RN employees in the San Antonio area has been restrained;

   b. Compensation for hospital RN employees in the San Antonio MSA has been at artificially low levels; and

   c. San Antonio-area hospitals have underutilized RNs, yielding low nurse-to-patient ratios, forcing RNs to work harder for longer hours, and reducing patient quality of care.

40. Defendants' conspiracy to depress RN wages raises a serious healthcare issue. The Antitrust Division of the U.S. Department of Justice noted in its "Statements of Antitrust Enforcement Policy in Health Care" that "[a] collusive restriction on the compensation paid to health care employees, for example, could adversely affect the availability of health care personnel." Similarly, numerous studies have shown a strong correlation between the numbers of RNs that a hospital employs per patient and the hospital's morbidity and mortality rates. Although defendants and their co-conspirators, like hospitals across the country, complain about the RN shortage, they have not taken the most basic remedial action to alleviate it – they have not offered RNs competitive wages.

### Injury to Plaintiff and the Class

41. During the Class Period (and before), plaintiffs have suffered substantial economic harm in the form of lost compensation as a direct result of defendants' and their co-conspirators' unlawful agreement to depress RN compensation and their unlawful agreement to exchange RN compensation information.

### COUNT I

### CONSPIRACY TO DEPRESS WAGES IN VIOLATION OF SECTION 1 OF SHERMAN ANTITRUST ACT

42. Plaintiffs re-allege the allegations in paragraphs 1-41 as if set forth fully herein.

43. Beginning before April 2002 and continuing until the present, defendants and their co-conspirators have engaged in a continuing conspiracy in restraint of trade to depress the compensation of RNs employed at hospitals in the San Antonio MSA, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

11

44. Pursuant to this unlawful conspiracy, defendants and their co-conspirators have set the compensation of RNs employed at hospitals in the San Antonio MSA at artificially low levels.

45. As a result of the unlawful conspiracy alleged in this Count, plaintiffs and the other members of the Class have been injured in their business or property by receiving artificially depressed compensation during and before the Class period.

## COUNT II

### CONSPIRACY TO EXCHANGE COMPENSATION INFORMATION IN VIOLATION OF SECTION 1 OF SHERMAN ANTITRUST ACT

46. Plaintiffs re-allege the allegations in paragraphs 1-41 as if set forth fully herein.

47. Beginning before June 2002 and continuing until the present, defendants and their co-conspirators have engaged in a continuing agreement to regularly exchange detailed and non-public information about the compensation being paid or to be paid to their RN employees. This agreement is an unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

48. This information-exchange agreement has reduced competition among San Antonio-area hospitals in the compensation of their RN employees and has depressed the compensation of such employees.

49. The relevant geographic market for the claim alleged in this Count is the San Antonio MSA, and the relevant service market consists of the services provided to hospitals by RN employees.

50. A slight decrease in RN compensation from a competitive level could be imposed collectively by the conspiring hospitals in the San Antonio MSA without

causing too many RNs to move to any non-conspiring hospitals within the San Antonio MSA, non-hospital employers within the San Antonio MSA or to employers outside the San Antonio MSA.

51.   RNs often are constrained from moving to another geographic area because of region-specific licensing requirements, as well as other professional and familial obligations.

52.   Hospital RNs possess unique skill sets and gain industry-specific and employer-specific experience as they work, which renders them more valuable to hospitals than to non-hospital RN employers. As they gain experience, hospitals become the only practical outlets for hospital RNs to sell their services at an amount reflecting their skills and knowledge. Other potential employers, such as doctors' offices, nursing homes and outpatient clinics, offer RNs compensation substantially below that offered by hospitals.

53.   San Antonio-area hospitals expend significant resources accumulating information about compensation paid to RNs at other hospitals in the San Antonio MSA, but not about compensation paid to non-hospital RNs or RNs working outside the San Antonio MSA. San Antonio-area hospitals rely on this compensation information to set RN compensation levels, reflecting their own understanding that the relevant market involves only hospital RN employees in the San Antonio area.

54.   Defendants and their co-conspirators comprise nearly 100% of the hospitals within the San Antonio MSA. Collectively, they have substantial market power within the relevant market, including the power jointly to set hospital RN employee compensation below competitive levels. This joint power clearly exists because it in fact

has been used to pay Class members sub-competitive compensation. Moreover, RNs, like most laborers, cannot withhold their services until a later date as a means of negotiating for a higher compensation rate. They depend on a regular income. This weakens their negotiating position with hospitals and enhances the hospitals' market power.

    55.    The information-exchange agreement has had the effect of suppressing competition among San Antonio-area hospitals in the compensation of their RNs. The agreement's anticompetitive effect is apparent from the following facts, among others:

    a.  The information regularly exchanged by San Antonio-area hospitals pursuant to the agreement has been detailed and non-public information about current and future RN compensation. An agreement to exchange information of this type eliminates a major incentive of hospitals to increase RN compensation. The advantage of raising RN compensation is to attract more and better RN candidates by exceeding the compensation (as estimated from properly available competitive intelligence) paid by competing hospitals. But if a hospital knows that it cannot keep its superior compensation confidential from competitors, it will not offer such compensation in the first place. Without confidentiality, a hospital knows that most or all competing hospitals will match its higher compensation levels. The result is higher labor costs with no competitive advantage. An agreement to regularly exchange detailed and non-public information about current and prospective RN compensation assures that superior compensation will be timely and specifically known by competitors.

  Such an agreement, therefore, eliminates the incentive of hospitals to outbid their competitors.

b. Hospitals view RNs, within a few basic categories of experience and specialization, as fungible, permitting hospitals readily to compare and match each other's compensation.

c. The exchange of compensation information increases the relative bargaining power of hospitals in setting RN wages. With such information, hospitals know what others are paying their RN employees, while RN employee applicants, who lack access to most or all of such (non-public) information, know much less about the competitive landscape.

d. The regularity and detail of the information exchanged, the relationships of trust developed among the individuals exchanging the information, and the assurances given that the information would not be used for competitive advantage, encouraged defendants and their co-conspirators to use the information to match and not exceed each other's RN employee compensation levels.

56. For these reasons, the effect of the information-exchange agreement, before and during the Class period, has been to reduce competition among hospitals in the compensation of RN employees and to depress such compensation.

57. As a result of the unlawful agreement alleged herein to exchange RN compensation information, plaintiffs and the other members of the Class have been injured in their business or property by receiving artificially depressed compensation during and before the Class period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, prays that:

 A. The Court declare, adjudge, and decree this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

 B. Defendants' actions alleged herein be adjudged and decreed to be in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

 C. Plaintiffs and the other members of the Class recover their damages against each defendant, jointly and severally, in an amount to be determined, and that this damage amount be trebled pursuant to 15 U.S.C. §15(a);

 D. Plaintiffs and the other members of the Class, to the greatest extent allowed by law, be awarded interest at the highest legal rate from and after the date of service of this Complaint;

 E. Plaintiffs and the other members of the Class recover their costs of this suit, including reasonable attorneys' fees, as provided by law; and

 F. Plaintiffs and the other members of the Class be granted such other relief deemed proper to this Court.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all issues so triable in this case.

Dated: September 7, 2006

                         PERRY & KELLOGG, L.L.P

                         By *[signature: Luke C. Kellogg]*
                              LUKE C. KELLOGG
                              7801 Broadway, Suite 200
                              San Antonio, Texas 78209
                              Tel.: (210) 821-3377
                              Fax: (210) 821-3388

                              MARK A. GRIFFIN
                              RAYMOND J. FARROW
                              KELLER ROHRBACK L.L.P
                              1201 Third Avenue, Suite 3200
                              Seattle, Washington 98101-3052
                              Tel.: (206) 623-1900
                              Fax: (206) 623-3384

                              MICHAEL D. HAUSFELD
                              DANIEL A. SMALL
                              JOSEPH M. SELLERS
                              CHARLES P. TOMPKINS
                              ALLYSON B. BAKER
                              COHEN MILSTEIN HAUSFELD
                              & TOLL, P.L.L.C.
                              1100 New York Ave., NW
                              Suite 500, West Tower
                              Washington, D.C. 20005
                              Tel: (202) 408-4600
                              Fax: (202) 408-4699

                DAVID P. DEAN  
                MARY JOYCE CARLSON  
                JAMES & HOFFMAN  
                1101 17th St., NW  
                Suite 510  
                Washington, D.C. 20036-4748  
                Tel: (202) 496-0500  
                Fax: (202) 496-0555  

                MICHAEL P. LEHMANN  
                THOMAS P. DOVE  
                KIMBERLY A. KRALOWEC  
                THE FURTH FIRM LLP  
                225 Bush Street, 15th Floor  
                San Francisco, CA 94104  
                Tel: (415) 433-2070  
                Fax: (415) 982-2076  

                DANIEL E. GUSTAFSON  
                JASON S. KILENE  
                GUSTAFSON GLUEK PLLC  
                650 Northstar East  
                608 Second Avenue South  
                Minneapolis, MN 55402  
                Tel.:  (612) 333-8844  
                Fax:  (612) 339-6622  


                Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Second Amended Class Action Complaint was sent via Certified Mail, Return Receipt Requested on the 7th day of September, 2006, to the following counsel of record:

Mr. David L. Hanselman, Jr.
MCDERMOTT, WILL & EMERY, L.L.P.
227 West Monroe Street
Chicago, IL 60606

    *Attorney for Defendant VHS San Antonio Partners, L.P.*
    *D/B/A Baptist Health System*

Layne E. Kruse
FULBRIGHT & JAWORSKI L.L.P.
Fulbright Tower, Suite 5100
1301 McKinney Street
Houston, Texas 77010-3095

Robert G. Newman
FULBRIGHT & JAWORSKI L.L.P.
300 Convent, Suite 2200
San Antonio, Texas 78205-3792

James H. Kizziar, Jr.
BRACEWELL & GUILIANI L.L.P.
800 One Alamo Center
106 S. St. Mary's Street
San Antonio, Texas 78205-3603

    *Attorneys for Defendant Christus Santa Rosa*
    *Health Care Corporation*

Robert C. Jones
Phillip A. Proger
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

Ricardo G. Cedillo
Derick J. Rodgers
DAVIS, CEDILLO & MENDOZA, INC.
McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, Texas 78212-3149

>*Attorneys for Defendants HCA and Methodist Healthcare System of San Antonio, Ltd. L.L.P.*

Luke C. Kellogg